UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHARI LYNN REESE,

      Plaintiff,                                    Civil Action No. 16-cv-13931

      v.                                           Magistrate Judge Mona K. Majzoub

COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.
_____/

**OPINION AND ORDER
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [19] AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [22]**

Under 42 U.S.C. § 405(g), Plaintiff Shari Lynn Reese seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to Social Security benefits. (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 19) and Defendant's Motion for Summary Judgment (docket no. 22). With consent of the parties, this case has been referred to the undersigned for final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Docket no. 17.) The Court has reviewed the pleadings and dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

## I.    PROCEDURAL HISTORY

On October 18, 2012, Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") on the basis of alleged physical and mental impairments. (TR 161-71.) The Social Security Administration initially denied Plaintiff's claims. (TR 96-103.) On May 27, 2015, Plaintiff appeared with a representative and testified at

a hearing before Administrative Law Judge (ALJ) Stephen Marchioro. (TR 32.) On August 19, 2015, the ALJ issued an unfavorable decision on Plaintiff's claims. (TR 32-67.) Plaintiff requested a review of the ALJ's decision with the Appeals Council, which was denied on September 1, 2016. (TR 1-6.) On November 4, 2016, Plaintiff commenced this action for judicial review, and the parties filed cross motions for summary judgment, which are currently before the Court. (Docket no. 19; docket no. 22.)

### III. HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff sets forth a brief procedural history of this matter as well as a short summary of the relevant medical records. (Docket no. 19, pp. 3-15.) The ALJ summarized Plaintiff's medical records (TR 17-25), and Defendant deferred to the ALJ's summary (docket no. 22, p. 4). Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record. Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also refer and cite to the record as necessary to address the parties' arguments.

### IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ determined that Plaintiff did not engage in substantial gainful activity since October 4, 2012, the alleged onset date. (TR 16.) In addition, the ALJ found that Plaintiff had the following severe impairments: "cerebrovascular accident (CVA) and late effects of cerebrovascular disease." (*Id*. at 17.) Nevertheless, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (TR 18.) In addition, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform

light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can occasionally climb ramps and stairs, occasionally climb ladders/ropes/scaffolds, frequently balance, stoop, kneel, crouch, and occasionally crawl, that she must avoid frequent exposure to excessive vibration, and that she is limited to simple, routine and repetitive work tasks with no production or pace work. (TR 18.) On the basis of this determination, the ALJ posed a hypothetical to the Vocational Expert ("VE"), who testified Plaintiff is capable of performing past relevant work as a housekeeper/cleaner. (TR 25.) Consequently, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time since October 4, 2012, the alleged onset date. (TR 25.)

## V.   LAW AND ANALYSIS

### A.   Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

    **B.**    **Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)    Plaintiff was not presently engaged in substantial gainful employment; and

(2)    Plaintiff suffered from a severe impairment; and

(3)    the impairment met or was medically equal to a "listed impairment;" or

(4)    Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be

deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [Plaintiff's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C. Analysis

Plaintiff raises four objections to the decision of the ALJ. (Docket no. 19.) First, Plaintiff asserts that the ALJ failed to address a statement from Plaintiff's former employer. (*Id.* at 16-17.) Second, Plaintiff contends that the ALJ erred by concluding that Plaintiff performed past relevant work as a housekeeper. (*Id.* at 17-18.) Third, Plaintiff argues that the ALJ failed to give proper weight to the opinion of Plaintiff's treating physician, Dr. Loretta Leja. (*Id.* at 18-19.) Finally, Plaintiff submits that the ALJ considered improper factors in weighing Plaintiff's credibility. (*Id.* at 19-20.)

#### 1. Statement of Plaintiff's Former Employer

Plaintiff contends that the ALJ erred by failing to consider a letter written by Melanie Kelso, Plaintiff's former employer, which stated that Plaintiff "does not seem to have the stamina that she once did," "seems to forget things at times that she never did before," and "is having a hard time doing the job." (Docket no. 19, p. 16; TR 197.) Plaintiff submits that "this letter was from a long-term employer who explained why Plaintiff no longer could perform the job that the ALJ concluded that she could do." (Docket no. 19, p. 17.)

5

Plaintiff's former employer is considered a "non-medical source." *See Titles II & XVI: Considering Opinions & Other Evidence from Sources Who Are Not "Acceptable Med. Sources" in Disability Claims*, SSR 06-03p (S.S.A. Aug. 9, 2006). Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case. *Id.*

Although the ALJ does not expressly address Ms. Kelso's letter, the decision nevertheless allows the reviewer to follow the ALJ's reasoning. Ms. Kelso's statement employs vague and open-ended language that fails to tie Plaintiff's asserted difficulties to any particular medical condition. Furthermore, the statement lacks a clear timeline. For example, Ms. Kelso states that Plaintiff is having a hard time "since [Plaintiff's] health problems." However, Plaintiff continued to work for Ms. Kelso throughout the 2013 season, after her CVA episode in October of 2012. (TR 42.) Accordingly, Ms. Kelso's statement is supplanted by more specific and authoritative medical evidence, which is discussed below.

### 2. Past Relevant Work

Plaintiff asserts that the ALJ erred by determining that Plaintiff performed "past relevant work" as a housekeeper. (Docket no. 19, p. 16.) According to Plaintiff, this conclusion is inconsistent with the ALJ's determination that substantially similar work after the alleged date of disability did not qualify as "substantial gainful activity." (*Id.*)

The ALJ explained that "past relevant work" means work performed (1) within fifteen years prior to the date on which disability must be established, (2) that was substantial gainful

activity ("SGA"), and (3) lasted long enough for the claimant to learn to do it. (TR 16.) The ALJ found that the Plaintiff's prior work as a housekeeper qualified as past relevant work. (TR 25.)

Plaintiff contends that her "earnings from 2001 forward show a maximum yearly income of $6,338.75 (in 2001) when the SGA standard for that year was $8,800.00." However, Defendant submits that Plaintiff's housekeeping work was SGA in 1997, 1998 and 1999. Comparing Plaintiff's wages to the SGA levels in those years confirms Defendant's assertion. Plaintiff earned $6523.58 in 1997, $8634.97 in 1998, and $9364.67 in 1999, (TR 181) each of which exceeds the SGA level in the relevant year ($6000.00 in 1997 and 1998, and $7200 in 1999). *See* 20 C.F.R. § 404.1574.

Plaintiff contends that her earnings should "be averaged over the entire period of work which requires evaluation." However, as Plaintiff acknowledges, such averaging is appropriate only where "an individual's pattern of work is continuous without significant change in work patterns or earnings, and there was no change of SGA earnings levels during the period involved." From 1997 through the alleged onset date, the SGA level changed several times, and Plaintiff experienced significant changes in earnings. Accordingly the ALJ properly declined to average Plaintiff's wages over the course of Plaintiff's entire tenure as a housekeeper, and properly determined that Plaintiff's housekeeping work was "past relevant work."

### 3. Treating Physician Dr. Leja

Next, Plaintiff contends that the ALJ failed to give adequate weight to the opinion of Plaintiff's treating physician, Dr. Loretta Leja. (Docket no. 19, pp. 18-19.) In particular, Plaintiff argues that the ALJ erred by giving little or no weight to Dr. Leja's opinion(s) that Plaintiff is disabled. (*Id.*)

Under the treating physician rule, the Commissioner mandates that the ALJ "will" give a treating source's opinion controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). If the ALJ declines to give a treating source's opinion controlling weight, he must then balance the following factors to determine what weight to give it: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2) (2004)).

The ALJ must also "give good reasons in [his] notice of determination or decision for the weight [given to a] treating source's opinion." 20 C.F.R. § 404.1527(c)(2). Such good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p, 1996 SSR LEXIS 9, at *12 (Soc. Sec. Admin. July 2, 1996). This requirement is not simply a formality; it is to safeguard the claimant's procedural rights, which is intended "to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that he is not." *Cole v. Astrue*, 661 F.3d 931, 937–38 (6th Cir. 2011) (citing *Wilson*, 378 F.3d at 544).

Addressing the medical opinions in the record, the ALJ analyzed four separate opinions by Dr. Leja: (1) a "Medical Needs" statement dated November 6, 2012 (TR 354), (2) a

"Statement of Disability" dated January 30, 2013 (TR 374), (3) an "Attending Physician's Statement" dated October 23, 2014 (TR 455), and (4) a "Physical Residual Functional Capacity Assessment Form" dated March 19, 2015 (TR 428). (TR 23-24.)

The November 2012 statement certified that Plaintiff required assistance with "meal preparation, shopping, laundry and housework" and concluded that Plaintiff could not work at any job. (TR 354.) The ALJ gave little weight to this statement (and no weight to its conclusion that Plaintiff should not work) because the opinion lacked "functional analysis" and "detailed explanation" and because "the duration of [the] restrictions was unclear." (TR 23.) Review of the one-page statement confirms the ALJ's reasons for giving the opinion little or no weight. Most significantly, this opinion was made approximately one month after Plaintiff's CVA episode, and gives no indication regarding the duration of the restrictions. (*See* TR 354.)

In the January 2013 report, Dr. Leja diagnosed a "cerebral aneurysm" and "coronary artery disease," and observed that Plaintiff had decreased visual acuity, unsteady gait, and decreased short-term memory. Ultimately, Dr. Leja restricted Plaintiff to "less than Sedentary Physical Capacity." (TR 374.) Again, the ALJ determined that Dr. Leja "did not provide a functional assessment or give the duration of [the] restrictions" and assigned little weight to the opinion. (TR 23.) Although this opinion is slightly more detailed than the November 2012 statement, it nevertheless fails to connect the symptoms (visual difficulties, unsteadiness, poor memory) to the proposed limitations (no lifting or carrying objects) and expressly states that the period of the restrictions is "unknown." (TR 375.)

In the October 2014 statement, Dr. Leja reported that Plaintiff "has back of head pain, blurred vision, loss of short term memory, etc." (TR 455.) The opinion also states that Plaintiff could never kneel or crouch, could occasionally climb, stoop, crawl, reach, and walk, and could

frequently balance, sit, and stand. Plaintiff was restricted to sedentary work, and Dr. Leja expected Plaintiff to return to part-time work in October of 2014. (*Id.*) The ALJ gave this opinion "some weight" to the extent that "the claimant retained the ability to perform part-time work," but determined that Dr. Leja's "conclusions that the claimant could never kneel, crouch or crawl were largely inconsistent with the medical evidence of record and the claimant's work effort after her alleged onset date." (TR 24.) Review of this opinion, which is stated primarily in a checkbox format on an insurance company template, supports the ALJ's reasons for giving it only some weight. Again, Dr. Leja provides no analysis linking the reported symptoms to the limitations prescribed.

Finally, in March of 2015, Dr. Leja observed that Plaintiff "had a ruptured aneurysm resulting in [decreased] eyesight, unsteadiness, and very poor short term memory." (TR 432.) Based on this diagnosis, Dr. Leja opined that Plaintiff could never climb ladders and scaffolds, could occasionally climb stairs, balance, stoop, kneel, crouch, and crawl, and could frequently bend and twist. With regard to daily activities, Dr. Leja reported that Plaintiff could shop, travel alone, walk without assistance, use public transportation, climb stairs with a handrail, prepare a simple meal, and handle personal hygiene. (TR 433.) The ALJ gave little weight to this opinion because it was made on a "box type" form, which lacked reference to medical records, and the ALJ further observed that Dr. Leja's treatment records "do not support this extreme level of impairment." (TR 24.) Review of the record supports the ALJ's reasons for discrediting the March 2015 opinion. Primarily, this opinion lacks any sort of functional analysis that would explain how the observed symptoms—decreased eyesight, unsteadiness, and short-term memory issues—support the prescribed limitations, or the opinion that Plaintiff would likely miss three days of work per month.

As discussed above, the ALJ expressed good reasons for giving only partial weight, or sometimes no weight, to Dr. Leja's opinions. The ALJ properly determined that Dr. Leja's opinions were: (1) conclusory and/or not supported by detailed functional analysis, (2) based largely on Plaintiff's own reporting of her symptoms and not supported by objective testing (an August 28, 2014 MRA of Plaintiff's brain was "grossly unremarkable" (TR 460)), (3) not supported by Dr. Leja's own treatment notes, (4) inconsistent with Plaintiff's work record since the alleged onset date, and (5) inconsistent with other medical records and opinions, such as those of Dr. Theodore Brooks. The ALJ further observed that Dr. Leja's opinions failed to meaningfully address the likely duration of Plaintiff's limitations, which is especially problematic in light of variations among Dr. Leja's reports regarding Plaintiff's symptoms and restrictions. For example, while Dr. Leja's opinions of January 2013 and March 2015 refer to "unsteadiness," this condition was "not present" in August of 2014, and was not listed as a symptom in October of 2014. (TR 438, 456.) Furthermore, in November of 2012, Dr. Leja opined that Plaintiff required assistance with "meal preparation, shopping, laundry and housework," but by March of 2015, Dr. Leja reported that Plaintiff could shop, travel alone, walk without assistance, use public transportation, climb stairs with a handrail, and prepare a simple meal. (TR 354, 432.)

As set forth above, the ALJ gave good reasons for assigning limited weight to Dr. Leja's opinions.

*4. Credibility Determination*

Plaintiff contends that the ALJ improperly considered two factors in assessing Plaintiff's credibility: (1) that Plaintiff received unemployment benefits after the alleged onset date, and (2) that Plaintiff continued to smoke cigarettes despite Dr. Leja directing her to quit.

11

With respect to the unemployment benefits, the ALJ reasoned that if Plaintiff "were truly unable to work at any job, that she would then no longer be eligible for unemployment benefits." (TR 23.) Plaintiff asserts that her "limited receipt of unemployment benefits . . . should not have been held against her" because under Michigan law, "an individual could be eligible for both benefits." (Docket no. 19, p. 19 (citing *Ross v. Acrisure*, 2014 WL 3973380 (Mich. Ct. App. Aug. 14, 2014)).) Conversely, Defendant submits that "[a]pplications for unemployment and disability benefits are inherently inconsistent" because "[t]here is 'no reasonable explanation for how a person can claim disability benefits under the guise of being unable to work, and yet file an application for unemployment benefits claiming that [she] is ready and willing to work." (Docket no. 22, p. 20 (citing *Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801-02 (6th Cir. 2004)).)

The primary cases cited by the parties, *Ross* and *Workman*, are unpublished decisions, which the Court will follow only to the extent they are persuasive. *See United States v. Sanford*, 476 F.3d 391, 396 (6th Cir. 2007) (noting that unpublished opinions are not binding precedent under the doctrine of stare decisis). Plaintiff also refers to a case in which the Supreme Court found no inherent conflict between claiming "disability" for the purposes of Social Security benefits and being able to "perform the essential functions" of one's job "with . . . reasonable accommodation" for purposes of the Americans with Disabilities Act. *See Cleveland v. Policy Mgt Sys Corp*, 526 U.S. 795, 802–06 (1999). However, the Court in *Cleveland* cautioned that "a plaintiff's sworn assertion in an application for disability benefits that she is, for example, 'unable to work' will appear to negate an essential element of her ADA case—at least if she does not offer a sufficient explanation" and held that "an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim." *Id.* at 806.

In light of this precedent, the Court finds that the ALJ did not err by discrediting Plaintiff based on her receipt of unemployment benefits after the alleged onset date. Plaintiff offered no explanation for the "apparent contradiction" of receiving unemployment benefits during an alleged period of disability. In fact, when the ALJ raised the issue at the hearing on May 27, 2015, Plaintiff stated that she "ha[d]n't gotten unemployment in the last two years." (TR 45.) Plaintiff's earnings records, which show receipt of unemployment benefits in 2013 and 2014, prove that statement to be false. (TR 194.) In subsequent briefing, Plaintiff admits to "limited receipt of unemployment benefits," but still offers no explanation for the apparent paradox of simultaneously receiving unemployment benefits and Social Security disability benefits.

Next, Plaintiff asserts that "for the ALJ to take the standard sort of advice that all physicians give to their patients [i.e., to quit smoking] and turn it into a blot on Plaintiff's credibility is wrong." (Docket no. 19, p. 20.) Plaintiff acknowledges that "Defendant can refer to some cases that say that such considerations are not prohibited" but insists that "[f]or this ALJ to assert that Plaintiff is not credible because she cannot stop smoking a substance that is as addictive as heroin, but is still legal, is ridiculous." (*Id.*)

Although this Court appreciates, "the well-known (and easily ascertained) fact that it is hard to quit smoking because nicotine is addictive" (*see* docket no. 22, p. 19), Plaintiff advances no persuasive authority in support of the contention that the ALJ erred by considering Plaintiff's failure to quit despite Dr. Leja's repeated instruction to do so. To the contrary, multiple cases in the Sixth Circuit (although largely unpublished) have upheld consideration of claimants' failure to quit smoking. *See Marshall v. Comm'r of Soc. Sec.*, 2014 WL 2587612, at *2 (E.D. Mich. June 10, 2014) ("The Sixth Circuit has routinely recognized that '[t]he failure to stop smoking against medical advice can properly be considered in assessing credibility.'") (citing *Hall–Thulin*

*v. Comm'r of Soc. Sec.*, 1997 WL 144237, at *1 (6th Cir. Mar. 27, 1997) ("It was not improper for the ALJ and the magistrate judge to consider the plaintiff's smoking history and her two-year delay in following her physician's advice to quit smoking.") and *Sias v. Secretary of Health and Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988) (relying on the fact that "the claimant admits that against the advice of his doctor he smokes two packs of cigarettes a day")).

Accordingly, the ALJ did not err by considering (1) that Plaintiff received unemployment benefits after the alleged onset date, and (2) that Plaintiff continued to smoke cigarettes despite Dr. Leja directing her to quit.

## VI.   CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment [19] is **DENIED**, and Defendant's Motion for Summary Judgment [22] is **GRANTED**.


Dated: December 14, 2017         **s/ Mona K. Majzoub**
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE


### PROOF OF SERVICE

I hereby certify that a copy of this Opinion and Order was served upon counsel of record on this date.

Dated: December 14, 2017         s/ Leanne Hosking
                                 Case Manager